IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION



ANTHONY AMOS,

       Plaintiff,

v.

HERTZ TRANSPORTING, INC. and
THE HERTZ CORPORATION,

       Defendants.

CIVIL ACTION NO.

1:03-CV-1359-JEC

**ORDER & OPINION**

This case is presently before the Court on Defendants' Motion for Summary Judgment [81]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that Defendants' Motion for Summary Judgement [81] should be **GRANTED**.

**BACKGROUND**

**I.   Factual Background**

In March of 1998, defendants The Hertz Corporation and Hertz Transporting, Inc. (hereinafter collectively referred to as "Hertz" or, more simply, "defendant") hired plaintiff in this action, Anthony Amos, to work at Hertz's Atlanta Hartsfield Jackson International

Airport location.[1]  (Defs.' Concise Statement of Undisputed Material
Facts ("DSMF") [81] at ¶ 1.)   Prior to that time, on January 10,
1994, while employed as a sanitation worker for DeKalb County
Sanitation, plaintiff was struck by a vehicle and injured.  (Compl.
at ¶ D.1.)   Plaintiff's doctors concluded that he was permanently
partially disabled and restricted him from lifting more than twenty
pounds and from excessive bending, reaching, or twisting.   (Id.)
Plaintiff was forced to retire from sanitation work.   (Id.)

At the time of hire by Hertz, plaintiff says he explained his
physical limitations to Ms. Pat Blackburn, a member of defendant's
human resources department, and, as an accommodation for his
limitations, was given a position as a shuttle van driver. (Pl's
Concise Statement of Undisputed Material Facts ("PSMF") [83] at ¶¶ 3-
4.)   However, in a voluntary disability self-identification form
completed as part of the new-hire process, plaintiff answered "no" to
the question "Do you have any limitations due to your disability that
may affect your ability to perform the job(s) applied for?" (DSMF at
¶ 3.)   Similarly, plaintiff answered "no" to the question  "Are there

---

[1] Plaintiff initially brought suit against Hertz Transportation,
Inc. and Hertz Rental Car Company.  Plaintiff then filed an amended
complaint to correct the name of these defendants to Hertz
Transporting, Inc. and Hertz Corporation. (Amended Compl. [2] at 1.)
Now, in its motion for summary judgment defendant indicates that it
has been incorrectly denominated as Hertz Transporting, Inc. and is,
instead, Hertz Transportation, Inc. (Defs.' Mot. for Summ. J.
("Defs.' Summ. J.") [81] at 1.)

any accommodations that would be helpful to you in performing the job(s) for which you are applying?" (*Id.* at ¶ 4.)   Regardless of whether or not the assignment was intended as an accommodation for plaintiff's disabilities and whether plaintiff or someone else checked the "no" boxes for the disability related questions, with the exception of a three-month period, from March 1998 through July 2005 plaintiff worked for defendant as a van driver.[2] (*Id.* at ¶ ¶ 42-43.) The three-month exception occurred sometime in late 1998 or early 1999, during a period of time in which defendant laid off all other van drivers at the Atlanta airport besides plaintiff.   During the layoff plaintiff performed what is referred to by both plaintiff and defendant as "transporting" duties.

An employee performing transporting duties is responsible for moving rental cars around the airport and in between various lots located near the airport. (Dep. of Anthony Amos, October 28, 2003 ("Dep. Amos 2003") at 25.)   This job requires the "transporter" to repeatedly get in and out of numerous rental cars.   Plaintiff contends that the few months he spent fulfilling the role of

---

[2]   On July 21, 2005, during the pendency of this litigation, defendant terminated plaintiff from its employ. (*See* PSMF at ¶ 2.) Plaintiff has not sought leave to amend his Complaint to add any claims for disability discrimination, retaliation, or harassment based on his termination.   Moreover, no discovery was conducted on this issue.   Accordingly, any potential claim or claims based on plaintiff's termination are beyond the scope of this action and have not been considered by the Court.

3

"transporter" caused him great pain.  More specifically, plaintiff maintains that the pain caused by the bending and stooping required to get in and out of the various rental cars led plaintiff to take over-the-counter pain medications that, in turn, caused plaintiff to suffer an episode of gastric bleeding that landed plaintiff in the hospital for treatment. (*Id.* at 81-83.)

By early 1999, plaintiff was back to serving as a van driver for defendant.  (DSMF at ¶ 44.)   In late 1999, as an additional accommodation for plaintiff's various impediments, defendant assigned plaintiff to the night shift. (*Id.* at ¶ 45.)  The night shift allowed plaintiff to avoid working in the heat of the day which, evidently, helped plaintiff control his high blood pressure. (PSMF at ¶ 32.) According to plaintiff, the night shift assignment occurred after "excessively high blood pressure" caused plaintiff to seek emergency room treatment for a burst blood vessel in his nose. (*Id.* at ¶ 33.)

In sum, plaintiff maintains that he is disabled because of: (1) the back pain he suffers as a result of the 1994 sanitation worker accident which restricts plaintiff from lifting more than twenty pounds and from excessive bending, reaching, or twisting; (2) peptic ulcer disease which plaintiff has suffered from for "a long time" before he began working at Hertz and which requires plaintiff to eschew spicy food and high levels of stress so as to avoid a flare up and its associated stomach pain, bleeding, and diarrhea; and,

4

finally, (3) high blood pressure. (Dep. of Anthony Amos, October 22, 2004 ("Dep. Amos 2004") at 117-20; PSMF at ¶ 33.)

From the start of his employment, plaintiff, who possesses a handicapped parking sticker issued by the State of Georgia, was permitted to park in a handicapped space in defendant's airport on-site parking deck; a deck normally reserved for customers and managers. (DSMF at ¶ 11.)  All of defendant's other hourly employees are required to park their personal vehicles at a separate employee parking lot from which they take a shuttle bus to defendant's rental facility. (*Id.* at ¶ 7.)  Plaintiff admits to being physically capable of parking in the employee parking lot and taking the shuttle, but says that to do so would have caused him to suffer undue stress and discomfort. (Dep. Amos 2003 at 77; PSMF at ¶ 15.)

On five occasions during his approximately seven years of employment, plaintiff was either told to move his vehicle from the designated handicapped space in the on-site parking deck or questioned about his authorization to park on-site. (PSMF at ¶ 17.) These incidents occurred during the Summer of 2002.  On only one occasion,  June 20, 2002, did plaintiff actually have to move his vehicle. (*Id.* at ¶ 18.)  In addition to being asked to move his car, plaintiff says management harassed him by falsely accusing plaintiff of having a car that leaked oil onto the parking lot thereby posing a risk of slip and fall accidents. (*Id.* at ¶ 34.)  Plaintiff insists

5

that his car never leaked oil onto the parking lot, and that, instead, someone seeking to harass plaintiff must have poured a clear oil in the spot plaintiff parked in as a set up. (Dep. Amos 2003 at 136-39.)

In late June of 2002, plaintiff complained to defendant's employee relations manager for the Southeast region, John Kreitner, about being asked to move his car from the on-site designated handicapped spot in which, or nearby which, plaintiff usually parked. (DSMF at ¶ 20.) In response to plaintiff's complaint, Mr. Kreitner instructed all Hertz managers that plaintiff could park in any of the designated handicapped spaces located in defendant's on-site parking deck. (*Id.* at ¶ 21.) Apparently, Mr. Kreitner's instruction resolved any misunderstanding as, according to plaintiff, August 26, 2002, was the last time he was asked to remove his car from the on-site deck. (PSMF at ¶ 17.) Mr. Kreitner told plaintiff of the instructions he had given the managers and, in addition, instructed plaintiff to come to him with any future concerns. (DSMF at ¶ 22.)

Later in 2002, defendant modified a program which plaintiff had participated in since he was hired in 1998. The "deadheader" program allowed hourly employees, including plaintiff, who worked at defendant's airport location to earn extra money by signing up for special weekend trips to drive vehicles to and from various Hertz Ren-A-Car locations outside of the Atlanta-metropolitan area. (*Id.* at

6

¶ 33.)  In November of 2002, defendant decided that the deadheader program was causing too many staffing problems at its airport location because workers were committing to weekend "deadheading" trips and then making themselves unavailable for their regular weekday trips. (*Id.* at ¶ 35.)  Defendant was also having trouble tracking the hours of airport transporter employees who worked as deadheaders on the weekends, causing overtime costs to become too high. (*Id.* at ¶ 36.)

To remedy the situation, defendant gave all transporters, including plaintiff, the choice to either move to defendant's Springdale location and maintain the option to deadhead or continue to work at defendant's airport location and give up the opportunity to deadhead. (*Id.* at ¶ 37.)  Faced with the same choice that was given to all other airport transporters and van drivers, plaintiff decided to remain at the airport. (*Id.* at ¶ 38.)  According to plaintiff his decision was based on the fact that night shift work was not available at Springdale. (Dep. Amos 2004 at 111.)  Plaintiff asked defendant to allow him to continue deadheading despite plaintiff's choice to stay at the airport location, but this request was denied.  Since the November 2002 change in policy, no transporter assigned to defendant's airport location has been allowed to work in the deadheader program. (DSMF at ¶ 39.)  Plaintiff acknowledges that the decision to modify the deadheader program was an "across the

7

board" administrative decision, but nevertheless feels he should have
been allowed to continue deadheading as a "reasonable accommodation."
(Dep. Amos 2004 at 139.)

On February 7, 2003, plaintiff presented a doctor's note to Chad
Wheelus, defendant's employee relations manager.  The letter stated,
"Anthony Amos has chronic back pain and peptic ulcer disease.  he
needs to work in a situation where he does not bend, twist, push or
pull to excess.  I agree with the assessment of Dr. Spektor from
1995."[3] (DSMF at ¶ 24; PSMF at ¶ 22.)  On March 6, 2003, Mr. Wheelus
sent plaintiff a follow-up letter stating:

> Recently, you provided me with a note from your doctor
> stating that you had certain physical limitations.  Due to
> the vagueness of the information contained therein and the
> absence of any specific information in your Hertz medical
> file, I am now asking that your physician provide some
> additional clarification to his comments.  The intent
> behind my request is simply to gain a clear understanding
> of what your limitations are in comparison to the physical
> requirements of your job and to ensure periodically that
> any limitations you may have are properly addressed under
> ADA.  I am enclosing a Medical Release Form and a Return to
> Work Authorization that I need for your treating physician
> to complete and return to me as soon as possible but prior

_____

[3] Dr. Spektor's 1995 assessment concluded that plaintiff has the
functional capacity to perform light duty work that requires:
"occasional lifting 20 lbs. maximum; frequent lifting 10 lbs.
maximum; infrequent climbing or balancing; infrequent bending,
twisting, or stooping; infrequent pushing or pulling; no continuous
overhead reaching; no continuous exposure to cold; he needs short
term (5 minute) breaks every 45-60 minutes of continuous sitting or
standing for position change and muscle stretching." (Pl.'s Resp. in
Opp'n and Objection to Def.'s Mot. for Summ. J. ("Pl.'s Resp.") [83]
at Ex. 17.)

to 3/20/03.

(DSMF at ¶ 29.)   Of the belief that defendant's request for additional information was retaliatory and discriminatory, plaintiff does not recall ever getting the medical forms completed or otherwise responding to Mr. Wheelus' letter. (Dep. Amos 2004 at 137-39, 157.) During the time period that defendant was attempting to gather more information about plaintiff's condition, defendant pulled plaintiff off of van driving and moved him into a back room to fold maps. (*Id.* at 105-06.)   This happened approximately two to three times before plaintiff resumed his van driving duties. (*Id.*)

## II.  Procedural History

Proceeding *pro se*, on May 19, 2003, plaintiff filed the present action against defendants Hertz Transportation, Inc., Hertz Rental Car Company, Ford Motor Company, and eight individuals alleging violations of his civil rights under the Americans with Disabilities Act ("ADA") and Title VII.   (Compl. at ¶ B.1.)   More specifically, plaintiff alleges that he has been the victim of discrimination, harassment, and retaliation because of his disability and his efforts to enforce his rights under the ADA because: plaintiff was told on several occasions to move his car from the handicapped parking spot in defendant's on-site parking deck;  plaintiff was accused of having a car that leaked oil; plaintiff was forced to choose between staying at the airport and continuing to "deadhead"; plaintiff was asked to

9

provide additional medical information in March of 2003; and, finally, on two or three occasions plaintiff was removed from his van driving assignment and made to work in the back office while defendant sought additional medical information to clarify plaintiff's disability. (Dep. Amos 2004 at 157.)

On September 22, 2004, the Court dismissed all claims against Ford Motor Company and the individual defendants leaving Hertz Transportation, Inc. and Hertz Corporation as the only defendants in this case. (Order [57] at 10.) Jurisdiction is proper in this Court under 28 U.S.C. § 1331. This case is presently before the Court on Hertz's motion for summary judgment.[4]

### DISCUSSION

### I.   Summary Judgment Standard

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c)).

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on

---

[4]   *See* discussion *supra* at 1.  In this Order the Court refers to Hertz Transportation, Inc. and Hertz Corporation collectively as "Hertz" or "defendant".

10

the merits.   Instead, Rule 56 of the Federal Rules of Civil Procedure *mandates* the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of *every* element essential to that party's case on which that party will bear the burden of proof at trial.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.   *Id.* at 322-23.

The movant bears the initial responsibility of asserting the basis for his motion.   *Id.* at 323; *Apcoa, Inc. v. Fidelity Nat'l Bank*, 906 F.2d 610, 611 (11th Cir. 1990).   The movant is not required to negate his opponent's claim, however.   The movant may discharge his burden by merely "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case."   *Celotex*, 477 U.S. at 325.   After the movant has carried his burden, the nonmoving party is then required to "go beyond the pleadings" and present competent evidence[5] designating "'specific facts showing that there is a genuine issue for trial.'"   *Id.* at 324 (quoting FED. R. CIV. P. 56(e)).   While the court is to view

---

[5]   The nonmoving party may meet its burden through affidavit and deposition testimony, answers to interrogatories, and the like. *Celotex*, 477 U.S. at 324.

11

all evidence and factual inferences in a light most favorable to the nonmoving party, *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1236 (11th Cir. 2003), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

A fact is material when it is identified as such by the control-ling substantive law.  *Id.* at 248.  An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant.  *Id.* at 249-50.  The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted).  An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative."  *Anderson,* 477 U.S. at 249-50.  Thus, to survive a motion for summary judgment, the nonmoving party must come forward with specific evidence of *every* element material to that party's case so as to create a genuine issue for trial.

12

## II.  Plaintiff's Claim for Discrimination Under the ADA

The ADA, 42 U.S.C. § 12112, et. seq., mandates that covered employers shall not, "discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." Here, though neither party has addressed the direct/indirect issue, the Court concludes that plaintiff has presented no direct evidence of discrimination.[6] Accordingly, the familiar *McDonnell Douglas* burden-shifting analysis applies to this case. *See Collado v. United Parcel Serv. Co.*, 419 F.3d 1143, 1149-50 (11th Cir. 2005)(applying *McDonnell Douglas* framework to ADA case involving circumstantial evidence).

Under the *McDonnell Douglas* framework, plaintiff bears the initial burden of establishing a prima facie case of disability discrimination. *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004).  If plaintiff is able to meet the initial burden of establishing a prima facie case, the burden then shifts to defendant to articulate a legitimate, non-discriminatory reason for the negative employment action. *Id.*  This is merely a

---

[6]  "Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." *Denney v. City of Albany*, 247 F.3d 1172, 1182 (11th Cir. 2001).

13

AO 72A
(Rev.8/82)

burden of production, as defendant need not show that it was actually motivated by the legitimate, non-discriminatory reason proffered. *Id.* Once a legitimate, non-discriminatory reason is given, the inferential presumption of discrimination is eliminated and plaintiff is, once again, left with the ultimate burden of proving intentional discrimination.  To prove this intentional discrimination plaintiff is then given the opportunity to show that the legitimate, non-discriminatory reason proffered by defendant was not its true reason but, rather, a mere "pretext" for discrimination. *Id.*

### A.   Plaintiff's Prima Facie Case

To establish a prima facie case of discrimination under the ADA, plaintiff must show that: (1) he is disabled; (2) he was a "qualified individual" at the relevant time, meaning he could perform the essential functions of the job in question with or without reasonable accommodations; and (3) he was discriminated against because of his disability. *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001).  Defendant argues that it is entitled to summary judgment on plaintiff's claim for disability discrimination because plaintiff does not qualify as "disabled" for purposes of the ADA, and therefore cannot establish his prima facie case. (Defs.' Summ. J. at 11.)

Under the ADA, an individual is "disabled" if he: (1) has a physical or mental impairment that substantially limits one or more of his major life activities; (2) has a record of such impairment; or

14

(3) is regarded as having such an impairment. 42 U.S.C. § 12102(2); *see also Carruthers v. BSA Advertising, Inc.*, 357 F.3d 1213, 1215-16 (11th Cir. 2004).

### 1.   Substantially Limited in a Major Life Activity[7]

Plaintiff contends that his chronic back pain, peptic ulcer disease, and high blood pressure are physical impairments that substantially limit him in the major life activities of standing, walking, performing manual tasks, and working.[8] (Pl.'s Resp. at 12.)

---

[7]   Under this first definition of disability the Supreme Court has instructed the lower courts to engage in a three-step analysis. *Rossbach v. City of Miami*, 371 F.3d 1354 (11th Cir. 2004)(citing *Bragdon v. Abbott*, 524 U.S. 624 (1998)).   First, plaintiff must be impaired.   Second, the Court must identify the life activity that the plaintiff claims to be limited in and determine whether this activity is a major life activity under the ADA.   Finally, the Court must determine whether the impairment "substantially limits" the life activity in question. *Id.*

[8]   In his response plaintiff also states that "[h]e was severely limited in sexual relations with his wife" and, therefore, substantially limited in the major life activity of "marital relations (sexual relations)." (Pl.'s Resp. at 11-12.)   To the extent plaintiff is attempting to assert this as a basis for his being considered "disabled" for purposes of the ADA, the Eleventh Circuit has not expressly addressed whether engaging in sexual relations constitutes a major life activity.   *Robinson v. Hoover Enterprises Inc.*, 2004 WL 2792057 *5 (N.D. Ga. 2004)(Thrash, J.)(citing *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 n.4 (11th Cir. 2001)).
Were the Court to entertain this eleventh hour introduction of an alternative basis for finding plaintiff disabled and assume for purposes of summary judgment only that sexual relations do constitute a major life activity and, further, that plaintiff was substantially limited in this activity; this alleged impairment still could not ground plaintiff's prima facie case of discrimination because the record is completely devoid of any evidence that defendant knew or

The administrative regulations implementing the ADA certainly classify "working" as a major life activity. 29 C.F.R § 1630.2(j) (2005).  "Standing," "walking," and "manual tasks" have also been recognized as major life activities. *Rossbach*, 371 F.3d at 1358; *Hilburn v. Murata Electronics North America, Inc.*, 181 F.3d 1220, 1228 (11th Cir. 1999).  However, the Court's inquiry is far from over because plaintiff is only "disabled" for purposes of the ADA if he is substantially limited in one or more of these activities.

With regard to the major life activity of working, an individual is only substantially limited if he or she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skill and abilities.  The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j) (2005).

In this case, the only job plaintiff alleges that he cannot

---

regarded plaintiff as substantially limited in his ability to engage in sexual relations, and, more importantly, that defendant in any way discriminated against plaintiff because of the alleged limitations in plaintiff's ability to engage in sexual relations.

In other words, with regard to any limitations on plaintiff's ability to engage in sexual relations, plaintiff has produced no evidence to satisfy the third prong of the prima facie case of discrimination which requires that plaintiff be able to show that he was discriminated against because of his disability.

16

perform is that of "transporter." Indeed, the record is replete with evidence that plaintiff is able to perform the job of shuttle van driver for a full forty hours a week. At least two of plaintiff's supervisors, station managers Tim Miller and John Ryan, rated plaintiff's performance as a 9 or higher on a scale of 1 to 10. (Dep. of Tim Miller ("Miller Dep.") attach. to Pl.'s Resp. at Pl.'s Ex. 63 at 6; Dep. of John Ryan ("Ryan Dep.") attach. to Pl.'s Resp. at Pl.'s Ex. 64 at 4.) A Hertz transporter is responsible for moving rental cars around the airport and in between various lots located near the airport. Plaintiff maintains that his impairments, which preclude him from frequently bending, twisting, or stooping, make it too painful for plaintiff to perform the job of transporter. In his response plaintiff attempts to explain the difference in his ability to do the two jobs by pointing out that while a shuttle van driver is always in a sitting position with his back, hips, knees, and overall body weight supported by the seat of the vehicle; a transporter must constantly bend, stoop, and squat as he transfers himself between the various cars he is tasked with moving. (Pl.'s Resp. at 8.)

Accepting all this as true for purposes of summary judgment, what plaintiff has established is that he cannot perform the single, particular job of "transporter." The law is clear that, "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29

17

C.F.R. § 1630.2(j)(3)(i) (2005). Simply put, the job of Hertz "transporter," broadly construed as getting into and out of a range of cars to drive them back and forth between various destinations, is not a "class of jobs" or a "broad range of jobs" for purposes of the ADA.[9]

> To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

*Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 492 (1999). The Court thus concludes that plaintiff is not substantially limited in the major life activity of working.

With regard to the major life activities of standing, walking, and performing manual tasks, plaintiff has introduced evidence that he used a cane. Beyond plaintiff's use of a cane, there is also Dr. Masor's note about plaintiff's need to work in a situation where he does not bend, twist, push or pull to excess. Finally, there is the reference in Dr. Masor's note to Dr. Spektor's 1995 assessment which concluded that plaintiff could only occasionally lift a maximum of

---

[9]   This circuit has found "piloting airplanes" and "police officer" to be too narrow of fields to constitute a "class" or "broad range" of jobs. *See Rossbach*, 371 F.3d at 1361; *Witter v. Delta Air Lines, Inc.*, 138 F.3d 1366, 1369-70 (11th Cir. 1998).

AO 72A
(Rev.8/82)

twenty pounds; frequently lift a maximum of ten pounds; infrequently climb or balance; infrequently bend, twist, or stoop; infrequently push or pull; not engage in continuous overhead reaching; and not be subject to continuous exposure to cold.  Dr. Spektor also concluded that plaintiff either needed a position change or five minute break for every forty-five to sixty minutes of continuous sitting or standing.  Plaintiff also states, without medical evidence to support his assertions, that he is unable to put on his shoes without the assistance of a family member; cannot pick up items from low-lying places while standing; is unable to do any yard work; is only able to do some household work; and requires assistance on any shopping trip lasting more than thirty minutes. (Pl.'s Resp. at 11.)

While all of these limitations on plaintiff's life are unfortunate, not every condition or impairment rises to the level of a ADA qualifying disability. *See Carruthers,* 357 F.3d at 1215-16. This is why the ADA's definition of disability must be "interpreted strictly to create a demanding standard for qualifying as disabled." *Id.* at 1216.  The regulations implementing the ADA define the term "substantially limits" to mean "unable to perform . . . or . . . significantly restricted as to the condition, manner or duration, under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that

19

same major life activity." 29 C.F.R. § 1630.2(j)(1) (2005). What plaintiff describes, for example the need to change position or take a break for five minutes every forty-five to sixty minutes of continuous sitting or standing, is certainly a limitation in plaintiff's ability to walk, stand, and perform manual tasks, it is not a substantial limitation. The same is true for the other limitations plaintiff describes himself as having--they are limitations, just not substantial ones. Though the Eleventh Circuit has not squarely addressed the issue, it has favorably recognized the consistent conclusion of other courts which have held that someone who walks, sits, or stands "moderately below average" is not disabled under the ADA. *See Rossbach,* 371 F.3d at 1358; *see also Chanda v. Engelhard*, 234 F.3d 1219, 1222 (11th Cir. 2000)(recognizing that a diminished activity tolerance for normal daily activities such as lifting, running, and performing manual tasks does not constitute a disability under the ADA). In the end, as was the case for the major life activity of working, the Court concludes that plaintiff is not substantially limited in the major life activities of standing, walking, or performing manual tasks.

> **2.  Alternative Grounds for Finding Plaintiff "Disabled"**

Though plaintiff repeatedly points to his handicapped parking sticker as proof that he is "disabled," in fact, plaintiff has produced no evidence that he "has a record of" a substantially

20

limiting impairment.   The applicable regulation provides: "Has a record of such an impairment means has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 41.31(b)(3) (2005).  "The Georgia Department of Motor Vehicles issues handicapped permits based solely on certification by a physician. Certification or diagnosis of a disability for purposes of a parking permit falls short of the exacting standards of qualifying as disabled under the ADA." *Robinson*, 2004 WL 2792057 *5 (internal citation omitted).

Lastly, there is insufficient evidence for a reasonable jury to find that plaintiff was "regarded as having" a substantially limiting impairment.  At most, one of plaintiff's managers recognized that plaintiff sometimes had a hard time getting in and out of the shuttle van and defendant recognized that plaintiff had been issued a handicapped parking sticker and, because of this, allowed plaintiff to forego the employee parking lot and instead park in a handicapped parking spot in the on-site parking garage.  However, there is no evidence that defendant regarded plaintiff as having a substantial limitation in the major life activities of working, standing, walking, or performing manual tasks.  To the contrary, the record reflects that defendant believed plaintiff to be entirely capable of performing his job.

21

Plaintiff has failed to show that he has a physical or mental impairment that substantially limits one or more of his major life activities; has a record of such impairment; or is regarded as having such an impairment. Accordingly, plaintiff cannot meet his burden of establishing the first prong of his prima facie case of discrimination in violation of the ADA. As to plaintiff's discrimination claim, the Court thus **GRANTS** Defendants' Motion for Summary Judgement [81]. In doing so the Court notes that even if plaintiff were to have successfully established that he is "disabled" for purposes of the ADA and a "qualified individual," plaintiff's claim for disability discrimination would still fail as there is no evidence that plaintiff was discriminated against because of his disability.[10] Plaintiff complains of being asked to move his car, being falsely accused of having a car that leaked oil, no longer being able to do deadheader trips, being asked to provide additional medical information, and having to work in the back office on two or three occasions while defendant sought additional information to clarify plaintiff's limitations. None of these constitutes an adverse employment action. Simply put, "not every unkind act amounts to an adverse employment action." *Doe v. DeKalb County School*

_____

[10] Again, the Court does not consider in this action any claims that may have arisen out of defendant's July 2005 termination of plaintiff. *See supra* note 2.

*District*, 145 F.3d 1441, 1449 (11th Cir. 1998)(internal citation and quotation omitted).

## III. Plaintiff's Claim for Harassment

To successfully make out a claim for disability harassment plaintiff must show: (1) he is disabled under the ADA; (2) he was subject to unwelcome harassment; (3) the harassment to which he was subjected was based on a disability; (4) the harassment affected a term, condition, or privilege of his employment; and (5) the employer knew or should have known of the harassment, but failed to take prompt, remedial action. *Breda v. Wolf Camera, Inc.*, 1999 WL 961107 * (S.D. Ga. 1999), *aff'd in part and rev'd in part on other grounds*, *Breda v. Wolf Camera & Video*, 222 F.3d 886 (11th Cir. 2000)("we affirm without discussion the district court's grant of summary judgment to Appellee on Appellant's disability harassment claim."). To rise to the level of "hostile" the harassment must be sufficiently severe or pervasive to alter the conditions of employment. *Id.*

First of all, pursuant to the discussion *supra*, plaintiff cannot establish that he is disabled under the ADA.  Moreover, however insensitive it may have been for some of plaintiff's on-site managers to ask plaintiff to move his car out of its handicapped parking space, plaintiff's allegations in this regard do not show harassment that is either severe or pervasive.  As soon as plaintiff sought help on the parking spot issue from upper management, all of plaintiff's

23

immediate supervisors were informed that plaintiff could park in any designated handicapped parking spot and plaintiff was no longer asked to move his car.  Whatever the explanation for the oil spots near plaintiff's car, the fact that plaintiff was on several occasions accused of having a car that leaked oil does not establish severe or pervasive harassment.  Indeed, such conduct falls far short of the kind of harassment that actually alters a condition of employment. As for the "deadheading" program, there is no evidence that defendant's decision to make an across the board change in how it administered one of it's programs was in any way discrimination or harassment based on disability.  Finally, there was nothing harassing about defendant's request to clarify plaintiff's doctor's note with additional medical information or defendant's placing plaintiff on office duty while it sought to gather this information.  The Court **GRANTS** Defendants' Motion for Summary Judgement [81] on plaintiff's claim for disability-based harassment under the ADA.

## IV.   Plaintiff's Claim for Retaliation

The proof necessary to establish a claim of disability discrimination is not the same as the proof required for a disability retaliation claim.  To establish a prima facie case of retaliation under the ADA plaintiff must show that: (1) he engaged in a statutorily protected expression; (2) he suffered an adverse employment action; and (3) there was a causal link between the

24

adverse action and his protected expression. *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1260 (11th Cir. 2001). Jumping to the second element of the prima facie case, as stated previously, plaintiff has failed to produce evidence sufficient to permit a reasonable jury to find that defendant took any adverse employment action against him. "An employment action is considered 'adverse' only if it results in some tangible, negative effect on the plaintiff's employment." *Id.* at 1261. On this basis alone, the Court **GRANTS** Defendants' Motion for Summary Judgement [81] on plaintiff's ADA retaliation claim.

Were the Court to go any further in its analysis, it also seems that plaintiff could not satisfy the first element of the prima facie case for retaliation. A plaintiff claiming retaliation must prove that he engaged in statutorily protected conduct. This requires the plaintiff to show that he had a good faith, objectively reasonable belief that he was disabled, and thereby protected by the ADA. *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002); *see also Robinson*, 2004 WL 2792057 at *3. This burden has both a subjective and objective component. The Court has no doubt that plaintiff had, and still has, a <u>subjective</u> good faith belief that he was protected under the ADA, but this alone is not enough. Whether a belief that conduct is statutorily protected is <u>objectively</u> reasonable must be assessed in terms of the applicable substantive law. Here the applicable substantive law clearly established that plaintiff is not

25

"disabled" under the ADA.

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgement [81].


SO ORDERED, this ___31___ day of January, 2006.


                              _JULIE E. CARNES_
                              UNITED STATES DISTRICT JUDGE

26